CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUL 1 2 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

UNITED MINE WORKERS OF
AMERICA, et al.,

    Plaintiffs,

v.

STONEGA MINING AND
PROCESSING COMPANY, et
al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:03cv00154
**MEMORANDUM OPINION**

By:   GLEN M. WILLIAMS
Senior United States District Judge

The plaintiffs, United Mine Workers of America, ("UMWA"), Johnny E. Holmes and Ronald B. Smith, filed this action alleging a breach of a collective bargaining agreement against Stonega Mining and Processing Company, ("Stonega"), and Stonega Mining and Processing Company Health Care Plan, ("Stonega Plan"). This matter is before the court on the defendants' Motion For Summary Judgment, (Docket Item No. 50), and the plaintiffs' Response to Defendants' Motion For Summary Judgment, (Docket Item No. 61). The court's jurisdiction over this matter is based upon § 301 of the Labor Management Relations Act of 1947, ("LMRA"), 29 U.S.C. § 185, and § 502 of the Employment Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1132.

*I. Facts*

On May 17, 1996, Stonega acquired certain coal preparation and mining

-1-

operations in Wise County, Virginia, commonly known as the Wentz Complex, from Westmoreland Coal Company, ("Westmoreland"). (Attachment 1 to Docket Item No. 22.) Westmoreland was a party to the "1993 Wage Agreement Between Westmoreland Coal Company and United Mine Workers of America," ("1993 Agreement"), which covered the operations acquired by Stonega. (Attachment 1 to Docket Item No. 22.) Article I of the 1993 Agreement contained a "succesorship" clause which stated that Westmoreland could not sell or transfer its idle operations without first requiring the purchaser to assume Westmoreland's obligations under the 1993 Agreement. (Attachment 2 to Docket Item No. 22.) In accordance with Article I, Stonega entered into a collective bargaining agreement with the UMWA, ("1996 Agreement"), in which Stonega assumed Westmoreland's obligations under the 1993 Agreement. (Attachment 1 to Docket Item No. 22.)

Article XX(c)(3)(i) of the 1993 Agreement provided that:

> Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees covered by this Agreement as well as pensioners under the 1974 Pension Plan and Trust whose last signatory classified employment was with such Employer and who are not eligible to receive benefits from a plan maintained pursuant to the Coal Act. The benefits provided by the Employer to its eligible Participants pursuant to such plan shall be guaranteed during the term of this Agreement by that Employer at levels set forth in such plan.

(Attachment 2 to Docket Item No. 22.) Article XX also contained a section entitled "General Description of the Health and Retirement Benefits" which stated that:

-2-

The parties expressly agree that the language references to "for life" and "until death" that are retained in this General Description are intended to mean that each Employer will provide, for life, only the benefits of its own eligible retirees who retired between February 1, 1993 and the Effective Date, or who retire during the term of this Agreement. A retiree shall be considered to be a retiree of an Employer if his last signatory classified employment was with such Employer.

(Attachment 2 to Docket Item No. 22.)

The 1996 Agreement provided that either Stonega or the UMWA could terminate the 1996 Agreement on August 1, 1998. (Attachment 2 to Docket Item No. 22.) In July of 1998, UMWA and Stonega began negotiations for a successor to the 1996 Agreement. (Attachment 1 to Docket Item No. 22.) By consent of both paties, the 1996 Agreement was allowed to expire on August 1, 1998. (Attachment 1 to Docket Item No. 22.) By operation of law, the terms of the 1996 Agreement remained in effect until the parties reached a new agreement or impasse was declared.

One of the principal issues discussed during negotiations was whether Stonega would continue to provide its employees with lifetime health benefits as was provided for in the 1996 Agreement. The UMWA initially requested that Stonega sign an extension agreement which would have required Stonega to abide by its expired 1996 Agreement. (Docket Item No. 69, at 3.) Stonega did not agree to sign the extension agreement, and on January 6, 1999, it presented the UMWA with its own contract proposal. (Docket Item No. 69, at 3.) On March 12, 1999, Stonega presented the UMWA with an updated version of its contract proposal, as some of its earlier

-3-

provisions had been illegible. (Docket Item No. 69, at 3.) By letter dated April 21, 1999, Stonega notified the UMWA that the negotiations had reached an impasse and that it was implementing its "last best offer" of March 12, 1999, ("1999 Agreement"). (Attachment 9 to Docket Item No. 61.) The 1999 Agreement eliminated Stonega's obligation to provide lifetime healthcare benefits to those employees retiring after August 1, 1998. Specifically, the Agreement provided that:

> The parties expressly agree that the language references to "for life" and "until death" that are retained in this General Description are intended to mean that each Employer will provide, for life, only the benefits of its own eligible retirees who retired *prior to Aug. 1998*. A retiree shall be considered to be a retiree of an Employer if his last signatory classified employer was with such Employer. The benefits and benefit levels provided by an Employer under its employer Plan are established for the term of this Agreement only, and may be terminated or modified in any manner at any time after the expiration or termination of this Agreement.

(Attachment 8 to Docket Item No. 22) (Emphasis added.) The letter went on to note, however, Stonega would "continue with the health plan currently in effect until further notice." (Attachment 9 to Docket Item No. 61.)

On July 15, 1999, the UMWA filed an unfair labor practice charge with the National Labor Relations Board, (" NLRB"), claiming that Stonega had violated § 8(a)(5) of the National Labor Relations Act, ("NLRA"), 29 U.S.C.A. § 158(a)(5) (West 2003),[1] by unilaterally implementing its March 12, 1999, proposal without first

---

[1] This provision states that it shall be an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of § 159(a) of this title." 29 U.S.C.A. § 158(a)(5).

bargaining with the UMWA to the point of impasse. (Attachment 10 to Docket Item No. 22.) Upon the closing of Stonega's operations, however, the NLRB dismissed its investigation as moot. (Attachment 11 to Docket Item No. 22.)

Plaintiffs Holmes and Smith were employed by Stonega during the term of the 1996 Agreement, and they continued to work for Stonega after the 1996 Agreement expired. (Attachment 1 to Docket Item No. 22.) Each worked for Stonega until approximately February 2000, at which time Stonega ceased operations at the Wentz Complex and permanently laid off its employees. (Attachment 1 to Docket Item No. 22.) After Stonega closed its operations, Holmes and Smith applied for retiree health care benefits from the UMWA 1993 Benefit Plan and Trust, ("1993 Plan"). In October 2002, the 1993 Plan staff determined that Holmes and Smith were not eligible for 1993 Plan benefits because Stonega was not "no longer in business" and that it was still financially able to provide its retirees with health care benefits. (Attachment 2 to Docket Item No. 27.) The 1993 Plan staff further questioned whether Stonega had been contractually obligated to provide lifetime health care benefits for employees retiring during the term of the 1998 National Bituminous Coal Wage Agreement, as required for 1993 Plan eligibility. (Attachment 2 to Docket Item No. 27.)

On December 23, 2003, the plaintiffs filed this suit alleging that "Stonega, by failing and refusing to provide and maintain health and other insurance benefits for individual plaintiffs Holmes and Smith or their eligible dependants has breached and violated its obligation under its collective bargaining agreement with the UMWA." (Docket Item No. 1.) On September 23, 2004, Stonega filed a motion to dismiss

-5-

challenging the courts subject matter jurisdiction over the UMWA's claims. (Docket Item No. 21.) The court denied Stonega's motion on February 9, 2005, (Docket Item No. 49), and Stonega filed this motion for summary judgment.

## II. Analysis

A moving party is entitled to summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Communications Satellite Corp.* 759 F.2d 355 364-65 (4thCir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue

-6-

of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 248.

In an order dated February 9, 2005, the court adopted the Magistrate Judge's finding that it had subject matter jurisdiction to enforce obligations that vested under a collective bargaining agreement, regardless of whether that contract had expired. (Docket Item No. 49.) In its Motion For Summary Judgment, Stonega continues to argue that Holmes and Smith did not vest in their right to lifetime healthcare benefits during the term of the 1996 Agreement. (Docket Item No. 50.) Stonega argues that the rights at issue vest upon the employees' retirement, and that retirement in this case occurs on the last day of credited service. *See United Mine Workers of Am. Int'l Union, et al. v. Bethenergy Mines, Inc.*, No. Civ. A. 2:99-0738, 2001 WL 737558, *5 (S.D. W.V. Mar. 19, 2001). And, because their last day of credited service did not occur until after August 1, 1998, Stonega argues that the UMWA is incapable of showing the Holmes and Smith retired during the term of the 1996 Agreement. (Docket Item No. 58, at 3.)

Rather than presenting arguments tending to show that Holmes and Smith retired during the term of the 1996 Agreement, the UMWA now argues that a genuine issue of material fact remains as to "whether the parties agreed to extend the health and pension provisions of the 1996 collective bargaining agreement while a successor agreement was negotiated, and whether an 'implied-in-fact' contract modifying the terms of the 1996 Agreement existed between the parties that entitles the individual [p]laintiffs to health care." (Docket Item No. 61, at 1.) The UMWA argues that "if

the existence of such an oral agreement [entered into after the expiration of the 1996 Agreement] is ultimately proven, it will be established that Holmes and Smith 'retired under the terms of the parties' Wage agreement and that they are entitled to benefits.'" (Docket Item No. 61, at 10.) In support of its argument, the UMWA produced a letter from Stonega dated April 21, 1999, in which Stonega informed the UMWA that it would "implement all of the terms and conditions of our [1999 Agreement] effective Monday, April 26, *with the exception of our proposed new health care plan. Stonega will continue with the health plan currently in effect until further notice*." (Attachment 9 to Docket Item No. 61.) (Emphasis Added.)

While it appears that the UMWA has amended its theory of the case, it has not altered it to such an extent as to deny the court jurisdiction over this claim. As the UMWA notes, § 301 jurisdiction encompasses any "agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerk Int'l Assn. Locals 128 & 633 v. Lion Dry Goods*, 369 U.S. 17, 28 (1962). Therefore, for the reasons stated above, the court finds that a genuine issue of material fact remains as to whether Holmes's and Smith's rights vested during the term of a collective bargaining agreement. That being the case, the court has jurisdiction over this matter and summary judgment is inappropriate.

## III. Conclusion

Based on the above, Stonega's Motion For Summary Judgment is hereby DENIED.

An appropriate order will be entered.

DATED:     This _12_ day of July, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE